# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MICHAEL J. CARROLL,**

                **Plaintiff,**             **CIVIL ACTION NO. 13-CV-15281**

        **vs.**                        **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

                                             **MAGISTRATE JUDGE MONA K. MAJZOUB**

**OAKLAND COUNTY POLICE
DEPARTMENT, et al.,**

                **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Carroll, currently a prisoner at the Kinross Correctional Facility in Kincheloe, Michigan, filed this action under 42 U.S.C. § 1983 against Defendants Oakland County Sheriff's Department, Auburn Hills Police Department, Blue Cross Blue Shield of Michigan, Police Officers Zora, Garcia, and Gracey, and seven other unnamed officers. (Docket no. 1.) Plaintiff alleges that Defendants "used excessive force, deliberate indifference, gross negligence, [and] cruel and unusual punishment when they apprehended and arrested plaintiff thereby giving rise to a violation of plaintiff's [constitutional rights]." (*Id.*)

On July 30, 2014, the undersigned entered a Report and Recommendation, recommending that Defendant Blue Cross Blue Shield be dismissed from this matter; the Court adopted the Report and Recommendation and Dismissed Defendant Blue Cross on August 26, 2014. (Docket nos. 35 and 45.) Plaintiff filed a Motion to Amend and Amended Complaint on August 5, 2014, seeking to add several Defendants and clarify his claims. (Docket nos. 40 and 41.) Defendant Auburn Hills Police Department filed a Response to Plaintiff's Motion to Amend on August 27, 2014. (Docket

1

no. 51.)  Plaintiff filed a Reply.  (Docket no. 53.)  On August 22, 2014, Defendants Garcia, Gracey, Zora, and Oakland County Sheriff's Department filed a Motion for Summary Judgment (Docket no. 43.)  Plaintiff filed a Response.  (Docket no. 54.)  And on October 13, 2014, Defendant Auburn Hills Police Department filed a Motion for Summary Judgment.  (Docket no. 56.)  Plaintiff has filed two Motions for Extension and a Motion to Stay with regard to this matter and Defendants' pending Motions for Summary Judgment.  (Docket nos. 58, 59, and 65.)  Defendant Auburn Hills Police Department filed Responses to Plaintiff's Motions.  (Docket nos. 63, 64, and 67.)

Before the Court are Plaintiff's Motion to Amend (docket no. 40), Defendants Motions for Summary Judgment (docket nos. 43 and 56), Plaintiff's Motions for Extension (docket nos. 58 and 59), and Plaintiff's Motion to Stay (docket no. 65).  All pretrial matters have been referred to the undersigned for consideration. (Docket no. 7.)  Because all of the pending Motions are inextricably intertwined, the Court will address them concurrently.  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.    Recommendation

For the reasons stated herein, the undersigned recommends the following:

- The OCSD Defendants' Motion for Summary Judgment [43] should be Granted in Part and Denied in Part.  Defendants' Motion should be denied with regard to Defendants' Zora, Garcia, and Gracey and Plaintiff's claims of post-arrest excessive force and post-arrest assault and battery.  Defendants' Motion should be granted with regard to Plaintiff's remaining claims and the remaining OCSD Defendants, including his pre-arrest excessive force and pre-arrest assault and battery claims.

2

- The AHPD Defendants' Motion for Summary Judgment [56] Should be Granted.

- Plaintiff's Motion to Amend [40] should be Granted in Part and Denied in Part. Plaintiff's Motion should be granted with regard to his post-arrest excessive force and post-arrest assault and battery claims. Plaintiff's Motion should be denied with regard to his other claims. Additionally, the Court should order Plaintiff to file a new Amended Complaint limited to his post-arrest claims.

- Plaintiff's Motions for Extension [58] [59] and Motion to Stay [65] should be denied as moot.

In sum, this matter should survive only with regard to Plaintiff's post-arrest claims for excessive force and assault and battery.

## II.    Report

### A.    Facts

Plaintiff alleges that on January 21, 2013, he was involved as the driver in a high-speed chase with Oakland County and Auburn Hills police officers. (Docket no. 1 at 9.) When Plaintiff stopped, the officers surrounded the car, drew their weapons, and told Plaintiff to put his hands in the air. (*Id.*) Plaintiff alleges that Defendant Zora broke out Plaintiff's window and that the officers then pulled Plaintiff through the broken window, causing injury. (*Id.*)

Plaintiff alleges that Defendant Zora then handcuffed him and held him on the ground while the other Defendant officers kicked and stomped on him. (*Id.* at 10.) Plaintiff alleges that Defendants then "violently pulled [him] up off the ground," and he was walked to a patrol car. (*Id.*) Plaintiff claims that he then complained that his ribs were broken, so Defendant Zora took him to Pontiac Osteopathic Hospital. (*Id.*) Plaintiff alleges that after he was checked out by doctors, he

was transferred to Oakland County Jail where he was placed in a holding cell for five days without being allowed to shower or clean his wounds.  (*Id.* at 11.)

In his proposed Amended Complaint, Plaintiff adds the following Defendants: (1) City of Auburn Hills; (2) County of Oakland; (3) Auburn Hills Police Officers Austin Hughes and Jennifer Carlson, Chief Doreen Oklo, Deputy Chief Tom Hardesty, Sergeant Steve Groenn, Commanders Casimir Miraka and Todd Borouoski, and Leiutenant Gagnon (the AHPD Defendants); (4) Oakland County Sheriff Michael Bouchard; and (5) Oakland County Sheriff's Deputies Garza, Dennis, Wheatoroft, Ginnel, Sharma, Miller, and Zehnpfennig, Sergeants Ramsey and Miller, and Detective Marougi (the OCSD Defendants).  (*See* docket no. 41 at 1, 2.)  As will be addressed in more detail herein, Plaintiff proposed Amended Complaint includes alleged violations by the individual defendants of the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution and claims for relief against Auburn Hills and Oakland County under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

### B.     Governing Law

#### 1.     Motion to Amend

A court is to allow parties to amend their pleadings freely "when justice so requires." Fed.R.Civ.P. 15(a)(2).  "A party seeking to amend an answer must act with due diligence if it intends to take advantage of [Rule 15's] liberality."  *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, 05-10296, 2008 WL 4808823, at *8 (E.D. Mich. Oct. 22, 2008) (Ludington, J.) (internal quotation omitted).  "A court may deny leave to amend when a party unnecessarily delayed in seeking amendment, thereby []causing prejudice to the other party or unduly delaying the litigation."  *Id.* (citation omitted).  And a court may also deny leave to amend when the proposed

4

amendment would be futile. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). To determine whether an amendment would be futile, the Court determines whether the amendment could survive a motion to dismiss pursuant to Rule 12(b)(6). *Keely v. Department of Veterans Affairs*, 10-11059, 2011 WL 824493, at *1 (E.D. Mich. Mar. 3, 2011) (Majzoub, M.J.) (citation omitted).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To

make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### 2.        Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the

6

facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.**     **Analysis**[1]

  **1.**     **Plaintiff's Claims Against the AHPD and the OCSD and His Proposed Claims against the City of Auburn Hills and Oakland County**

Courts have repeatedly and uniformly held that county jails and the sheriff's departments that run them are agencies of the county, not separate legal entities, and thus, they cannot be sued.  *See Watson v. Gill*, 40 Fed. App'x. 88, 89 (6th Cir. 2002) (holding that a county jail is a department of the county and not a legal entity susceptible to suit); *Luster v. Macomb Cnty. Sheriff's Jail*, No. 06-12273, 2007 WL 1219028, *2 (E.D.Mich. April 25, 2007) (same); *see also Coopshaw v. Lenawee Cnty. Sheriff's Office of Lenawee Cnty*, No. 05-72569, 2006 WL 3298898, at *7 (E.D.Mich. Nov. 14, 2006); *Vine v. Cnty. of Ingham*, 884 F.Supp. 1153, 1158 (W.D. Mich. 1995);

---

[1]Because some of the claims in Plaintiff's proposed Amended Complaint are intertwined with his initial claims, they may be addressed independently or contemporaneously with Defendants' Summary Judgment arguments.

*Hughson v. Cnty. of Antrim*, 707 F.Supp. 304 (W.D. Mich. 1988).  Likewise, a municipal department, such as a city police department, does not exist as an entity independent from the municipality.  *See Michonski v. City of Detroit*, 162 Mich App 485; 413 N.W.2d 438 (1987).  Thus, Plaintiff's claims against the Auburn Hills Police Department and the Oakland County Sheriff's Department fail.

Nevertheless, in *Pegross v. Wayne Cnty. Jail*, No. 07-12839, 2008 WL 6722771 (E.D. Mich. May 22, 2008), a pro se plaintiff filed claims against multiple county jails without naming the related counties as defendants.  In determining whether to grant summary judgment in favor of the Sanilac County Jail, the court observed that in many cases where claims against a non-legal entity such as a county jail were dismissed, the proper legal entity automatically defended the suit or was named as an additional defendant.  *Id.* at *3 (citations omitted).  The court concluded that when the correct entity is not also named in the lawsuit, the proper course of action is not to dismiss the claims but to construe the complaint as though it had been filed against the appropriate entity.  *Id.*  Here, then, the Court should proceed as if Plaintiff had filed his claims against the City of Auburn Hills and Oakland County.[2]

To state a claim against a county or a municipality under § 1983, a plaintiff must allege that his injury was caused by an unconstitutional policy or custom of the municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   "[A] 'custom' is a legal institution that is permanent and established, but is not authorized by written law."  *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Monell*, 436 U.S. at 691).  A § 1983 plaintiff may establish the existence of

---

[2]Plaintiff's proposed Amended Complaint does add the City of Auburn Hills and Oakland County as Defendants in this matter.  (*See* docket no. 41 at 2.)

a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local. Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). In his original Complaint, Plaintiff makes the general allegation that the AHPD and the OCSD have a "policy or custom that allow[ their] officers to make arrest(s) and use excessive force when doing so." (Docket no. 1 at 4.) Plaintiff, however, bases this conclusion on the allegation that AHPD and the OCSD "ha[ve] an inadequacy (sic) training policy and or custom that require [their] officers to use excessive force, which was the moving force behind the assault against Plaintiff." (*Id.* at 6.) But Plaintiff's threadbare recitals of the elements of his claim, supported by his conclusory statements, do not state a plausible claim for relief. Moreover, even though his proposed Amended Complaint adds the City of Auburn Hills and Oakland County as a defendants, it does not address the underlying deficiency in his allegations. At most, Plaintiff adds to his conclusory statements by claiming that the City of Auburn Hills and Oakland County "knew or should have known of [the officers'] propensity for such unconstitutional conduct;" that their "fail[ure] to safeguard [against such conduct] amounted to a tacit approval;" that they "had a long standing custom, pattern, and/or practice of demonstrating deliberate indifference to unreasonable, inadequate and deficient investigations, illegal searches and seizures, and unsupported prosecutions complained to by law officers;" and that they "demonstrated deliberate indifference" by applying those customs, policies, or practices in this matter and failing to screen, investigate, and supervise [their] officers. (Docket no. 41 at 7-9.)

To the extent Plaintiff alleges that the City of Auburn Hills or Oakland County is liable for a failure to train its officers, a municipality is only liable where the Plaintiff proves that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result

of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex. rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006). Moreover, the plaintiff must "show that the municipal action was taken with the requisite degree of culpability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). "The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* The municipality must have "intentionally" deprived the plaintiff of a federally protected right. *Id.* at 405. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410.

The Sixth Circuit "has identified two situations justifying a conclusion of deliberate indifference in claims of failure to train": (1) the "'failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction;'" and (2) where "'the city fails to act in response to repeated complaints of constitutional violations by its officers.'" *Pendergrass*, 455 F.3d at 700-701 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.1999)). Deliberate indifference is established when "the need for more or different training is . . . obvious, and the inadequacy [is] likely to result in the violation of constitutional rights." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Plaintiff has provided no evidence to suggest that Auburn Hills and Oakland County do not properly train their officers. Moreover, there is no evidence to suggest, and Plaintiff does not allege facts to suggest, that Auburn Hills or Oakland County acted with deliberate indifference under the standard set forth above. Therefore, the Court should grant Defendants' Motions for Summary Judgment with regard to the Auburn Hills Police Department and the Oakland County Sheriff's Department. Additionally, the Court should deny Plaintiff's Motion

to Amend with regard to adding the City of Auburn Hills and Oakland County as Defendants.

> **2.** **Plaintiff's Claims Against OCSD Deputies Zora, Garcia, and Gracey and his Proposed Amended Complaint With Regard to OCSD Deputies Zora, Garza, Dennis, and Zehnpfennig, and Detective Marougi.**

In his initial Complaint, Plaintiff asserts that Defendants Zora, Gracey, and Garcia violated his Fourth Amendment rights when they used excessive force in effectuating his arrest. (Docket no. 1 at 7-11.) Specifically, he alleges that he was injured when Defendant Zora broke out his window and pulled him out of his car through the broken glass and when Defendants Gracey and Garcia hit, kicked, and stomped on him after he was handcuffed. (*Id.*) In his proposed Amended Complaint, he does not name Defendants Gracey or Garcia in any of his factual allegations, but he asserts that Deputy Zehnpfenning was one of the officers who participated in the high-speed chase that resulted in Plaintiff's arrest, he alleges that Detective Marougi "swore under oath to the[] false charges" on which Plaintiff was arraigned, and he alleges that Deputies Garza and Dennis lied under oath about the location of the gun that Plaintiff (allegedly) threw out of his window. (*See* Docket no. 41.) Plaintiff further alleges in his initial Complaint and in his proposed Amended Complaint that Defendants subjected him to cruel and unusual punishment and acted with deliberate indifference, both in violation of the Eighth Amendment. (*See* docket no. 1; docket no. 41 at 7-11.) And finally, Plaintiff brings state-law claims for assault and battery and gross negligence. (*See* docket no. 1.) Defendants assert that Plaintiff's excessive-force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1990), or in the alternative, that Plaintiff failed to state a claim of excessive force; that Plaintiff's Eighth Amendment claims do not apply to pretrial detainees; that Defendants are protected by qualified immunity; and that Defendants are shielded from Plaintiff's state-law claims because they are immune from intentional tort liability. (*See* docket nos. 43 and 51.)

11

### i.      Plaintiff's Excessive Force Claims

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court considered "whether a state

prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C.

§ 1983." *Id.* at 478.  The Court held:

> . . . to recover damages for allegedly unconstitutional conviction or imprisonment,
> or for other harm caused by actions whose unlawfulness would render a conviction
> or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into question by a
> federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.   A claim for
> damages bearing that relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under § 1983.

*Id*. at 486-487 (internal footnote omitted). The Court further explained:

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would, the complaint must be dismissed
> unless the plaintiff can demonstrate that the conviction or sentence has already been
> invalidated.  But if the district court determines that the plaintiff's action, even if
> successful, will not demonstrate the invalidity of any outstanding criminal judgment
> against the plaintiff, the action should be allowed to proceed, in the absence of some
> other bar to the suit.

*Id.* at 487 (internal footnote omitted).

> [T]to come within the *Heck* exception on an excessive force claim, either (1) the
> criminal provision must make the lack of excessive force an element of the crime or
> (2) excessive force must be an available affirmative defense to the crime. *Schreiber
> v. Moe*, 596 F.3d 323, 334 (6th Cir.2010). In analyzing an excessive force claim
> under *Heck*, "the court must look both to the claims raised under § 1983 and to the
> specific offenses for which the § 1983 claimant was convicted." *Id.* "The mere fact
> that the conviction and the § 1983 claim arise from the same set of facts is irrelevant
> if the two are consistent with each other." *Id.* The underlying inquiry is whether "the
> § 1983 suit seeks a determination of a fact that, if true, would have precluded the
> conviction." *Id.*

*Leverette v. Genesee County*, No. 13-10536, 2014 WL 2558655, *16 (E.D. Mich. June 6, 2014)

(Borman, J.).

12

Defendants argue that Plaintiff's allegations of excessive force are "inextricably intertwined" with his conviction and, therefore, his claims are barred by *Heck*. In support of their position, Defendants rely on *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005) (underlying conviction for assault); *Ryan v. Hazel Park*, No. 05-74815, 2007 WL 1174906 (E.D. Mich. Apr. 20, 2007) (underlying convictions for assault and resisting an officer); *Hill v. Dalbec*, No. 07-11954, 2007 WL 4181654 (E.D. Mich Nov. 27, 2007) (underlying convictions for assault and resisting an officer). As the Sixth Circuit noted in *Cummings*, the plaintiff could have raised his excessive force claim as a defense to the assault charge. *Cummings*, 418 F.3d at 683. And as the court noted in *Ryan* and *Hill*, a "lawful arrest" is a necessary element of a resisting-an-officer charge. *See Hill*, 2007 WL 4181654 at *3. Plaintiff asserts, however, that the cases cited by Defendants are inapposite because Plaintiff was not convicted of assault or resisting an officer.

Here, Plaintiff was convicted, in relevant part, of second-degree fleeing and eluding. *See People v. Carroll*, No. 317174, 2014 WL 5162476 (Mich. Ct. App. Oct. 14, 2014). And while Plaintiff is correct that the elements required to prove a charge of fleeing and eluding do not include the requirement of a "lawful arrest," his claims are, nonetheless, barred by *Heck*. As the Michigan Court of Appeals discussed with regard to Plaintiff's appeal,

> To convict Carroll of second-degree fleeing and eluding, the jury was required to find that (1) a uniformed police officer, driving a vehicle identified as an official police vehicle and *acting in the lawful performance of his or her duty*, directed Carroll by visual or audible signal to bring his vehicle to a stop, (2) Carroll willfully failed to obey that direction by increasing the speed of his vehicle or otherwise attempted to flee or elude the officer, and (3) Carroll had "1 or more prior convictions for first-, second-, or third-degree fleeing and eluding, attempted first-, second-, or third-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct."

*Id.* at *2 (quoting MCL §§ 257.602a(1), (4)(b)) (emphasis added). Neither the Michigan Courts nor

13

the Sixth Circuit have squarely addressed whether an excessive force claim is barred by an

underlying conviction for fleeing and eluding or whether an officer's use of excessive force exceeds

the "lawful performance" of his duty. But this Court's discussion in *Medley v. City of Detroit*, No.

07-15046, 2008 WL 4279360 (E.D. Mich. Sept. 16, 2008) (Battani, J.), provides some guidance:

> Finding that an arrest constituted an unreasonable seizure because excessive force
> was used does not necessarily imply the invalidity of plaintiff's convictions for being
> a felon in possession of a firearm, carrying a concealed weapon and possession of a
> firearm in the commission of a felony. An arrest could be performed after finding
> sufficient probable cause, but the arrest could constitute an unreasonable seizure for
> some reason that would not preclude prosecution of a case or prevent the use of
> certain evidence in a trial. In this case, plaintiff contends that the defendant police
> officers used excessive force during the arrest. The arrest itself may have been
> lawful, as could be the finding of weapons in plaintiff's possession, while the force
> used may have been excessive to the point that it constitutes an unreasonable seizure
> under the Fourth Amendment. The claim of excessive force would be independent
> from a claim of unlawful arrest which might challenge plaintiff's conviction. *The
> statutes governing the crimes for which plaintiff was convicted, unlike, for example,
> the statute for failure to obey . . . do not require that the officer be acting in the
> lawful performance of his duties.* Finding that excessive force was used during this
> arrest would not impact the jury's determination of defendant's guilt on the charges
> of felon in possession of a firearm, carrying a concealed weapon and possession of
> a firearm in the commission of a felony. Therefore, plaintiff's excessive force claim
> is not barred by *Heck*.

*Id.* at *12 (footnotes omitted) (emphasis added). The corollary to the *Medley* court's analysis

implies that where an element of the offense *does* require that the officer be acting in the lawful

performance of his duties, as is the case here, any subsequent claim for excessive force is barred by

*Heck*. That is, Plaintiff's current claim seeks a determination that Defendants violated Plaintiff's

constitutional rights by using excessive force during his arrest, which, if true, would preclude his

conviction because the lawful performance of the officers' duties was a necessary element of fleeing

and eluding.

This, however, does not end the Court's inquiry. The Sixth Circuit has held that "*Heck* does

14

not bar § 1983 suits alleging post-arrest excessive force":

> In *Sigley v. Kuhn*, for example, this Court allowed a plaintiff's civil rights claim to proceed, even after he pleaded "no contest" to resisting arrest under Ohio law. 205 F.3d 1341, 2000 WL 145187, at *1 (6th Cir.2000). In *Sigley*, the parties did not dispute that a lawful arrest was made or that the arrestee unlawfully resisted. Instead, the § 1983 plaintiff attempted "to prove that [the defendant] used unreasonable and excessive force subsequent to [the plaintiff's] arrest and resistance." *Id.* at *4 (emphasis added). The Court held in the plaintiff's favor, finding that excessive force occurring after his resistance and arrest would not necessarily imply the invalidity of the underlying conviction for resisting arrest. Similarly, in *Michaels v. City of Vermillion*, 539 F.Supp.2d 975, 994 (N.D.Ohio 2008), an Ohio district court allowed a § 1983 claim for excessive force to proceed where the plaintiff had a prior conviction for resisting arrest. After considering Sixth Circuit case law on the issue, the court held that "[w]hile *Heck* bars excessive force claims that imply the invalidity of a resisting arrest conviction under Ohio law, the use of force that gives rise to an excessive force claim could potentially occur after a lawful arrest was accomplished." *Id.* at 992 (internal citation omitted). *See also Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir.2006), abrogated on other grounds by *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), ("A synthesis of the[ ] [relevant] cases indicates that we must consider the nature and extent, if any, of [the plaintiff]'s resistance, paying particular attention to whether [the] alleged resistance occurred prior to the alleged use of excessive force....").

*Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 611-12 (6th Cir. 2014).

In his Complaint and his proposed Amended Complaint, Plaintiff asserts that after he was placed in handcuffs, various officers kicked or otherwise assaulted him while he was on the ground. (Docket no 1 at 5; docket no. 41 at 4.)  More importantly, though, a review of the dash-cam video provided by Defendant AHPD shows what appears to be an OCSD officer kicking Plaintiff while he is on the ground.  (*See* docket no. 66, video at 1:45:10 a.m.)  Thus, to the extent that his excessive-force claim alleges post-arrest excessive force, Plaintiff's claims are not barred by *Heck*.

Defendants also argue, in the alternative, that Plaintiff has failed to state a claim because even if they used force during Plaintiff's arrest, "[w]hen a suspect is actively resisting arrest, police officers do not violate the Fourth Amendment by administering force . . . to subdue to subject.

15

(Docket no. 43 at 20 (citing *Caie v. W. Bloomfield Twp.*, 485 F.App'x 92, 97 (6th Cir. 2012).) The

Sixth Circuit has set forth a framework for analyzing an excessive-force claim:

> Under the Fourth Amendment, we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir.2004); *see also Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443. We balance "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466–67 (6th Cir.2006). In doing so, three factors guide our analysis: "'[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir.2013) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443). These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight. *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443.

*Burgess v. Fischer*, 735 F.3d 462, 472–73 (6th Cir.2013) (alterations in original).

Here, Plaintiff admits that he led police on a high-speed chase through the snow-covered

streets of Pontiac.  (*See* docket no. 1 at 4.)  The officers testified at Plaintiff's trial that they were

responding to a report of a man inside a bar with a gun who left the scene in a vehicle matching the

description of the vehicle driven by Plaintiff.  (*See* docket no. 43 at 22-23.)  When they attempted

to pull him over, Plaintiff attempted a u-turn and struck Deputy Zora's patrol car.  He then led six

marked patrol cars on a six- to seven-mile chase, which only ended when Defendants were able to

force Plaintiff off the road and box him in.  (*Id.* at 23.)  Deputy Zora parked his patrol car against

Plaintiff's door, at which time he smashed out Plaintiff's driver's-side window, pulled him from the

car, and took him to the ground.  (*Id.*)  Deputy Zora testified that he did so because he was afraid

that backing up his patrol car would give Plaintiff an opportunity to flee the scene, and he feared that

Plaintiff was still in possession of the gun that was reported as part of the initial incident.  (*Id.* at 23-

16

24.)  Deputy Zora was unaware that Plaintiff had thrown the weapon from his vehicle during the chase.[3]

Regardless of Plaintiff's characterization, it is apparent that he was actively resisting arrest by fleeing from police until he was subdued.  Moreover, when considering that the responding officers believed that Plaintiff had a weapon in the vehicle, their actions were objectively reasonable.  As Defendants note, "[h]esitation, or the employment of inadequate force, can cost an office his life."  (Docket no. 43 at 21 (citing *Crehan v. Davis*, 713 F.Supp.2d 688, 698 (W.D. Mich. 2010)).)  Here, the officers were faced with just such a critical, split-second decision.  Thus, even viewing the evidence in a light most favorable to Plaintiff, the Court should grant Defendants' Motion with regard to Plaintiff's pre-arrest excessive-force claims.

Nevertheless, as discussed with regard to *Heck*, once Plaintiff was subdued, he was no longer a threat to officers.  And as noted, the AHPD dash-cam video shows what appears to be an OCSD office kicking Plaintiff while he is on the ground.  It is unclear whether Plaintiff continued to resist arrest once he was prone, but Plaintiff claims he did not.  (*See* docket no. 1 at 5.)  Thus, viewing this evidence in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Plaintiff is entitled to relief with regard to his post-arrest excessive-force claims against Defendants Zora, Garcia, and Gracey.[4]  Thus, the Court should deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion to Amend with regard to these claims.  The Court should

_____

[3]Although Plaintiff challenges the veracity of the officers' testimony related to the gun at his trial, such a challenge is beyond the scope of Plaintiff's Section 1983 claims and is barred by *Heck*.  Thus, for purposes of the instant Motion, the undersigned accepts the findings of the trial court, which determined that Plaintiff threw the weapon from his vehicle.  *See People v. Carroll*, 2014 WL 5162476.

[4]Notably, Plaintiff's proposed Amended Complaint does not contain any post-arrest factual allegations with regard to Deputy Zehnpfennig.

17

further order Plaintiff to file an Amended Complaint limited to his post-arrest excessive-force claims.

### ii.      Plaintiff's Eighth Amendment Claims

Plaintiff claims that in addition to using excessive force in violation of the Fourth Amendment, Defendants violated the Eighth Amendment's protection against cruel and unusual punishment when they pulled him from his car and (allegedly) beat him. (Docket no. 1 at 7-12.) Plaintiff does not reassert his Eighth-Amendment claims in his proposed Amended Complaint. (*See* docket no. 41.)   As Defendants argues, "the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir.2010).   And while Plaintiff did become a pretrial detainee at the time he was handcuffed, thus implicating the Fourteenth Amendment's substantive due-process protections, "'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *May v. Township of Bloomfield*, No. 11-14453, 2013 WL 2319323, *11 (May 28, 2013) (Cleland, J.) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)).   As the *May* court discussed, "[c]laims that police officers used excessive force 'in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness standard," rather than under a "substantive due process" approach.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).   Thus, Plaintiff's claims are more properly addressed under the Fourth Amendment, as discussed, *supra*.

### iii.      Plaintiff's Proposed Claims Against Detective Marougi and Deputies Garza and Dennis

18

Although not entirely clear where his factual allegations against Detective Marougi and Deputies Garza and Dennis fit within Plaintiff's eleven-count proposed Amended Complaint, he asserts that these individuals committed perjury during his arraignment and trial. (*See* docket no. 41 at 4-5.) Such a claim challenges the trial-court's findings and is not cognizable under Section 1983 as a finding in Plaintiff's favor "would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. 477, 487. Therefore, Plaintiff's Motion to Amend with regard to his allegations against Detective Marougi and Deputies Garza and Dennis should be denied.

### iv.    Plaintiff's State-Law Claims

Plaintiff's initial Complaint included claims of gross negligence, and his proposed Amended Complaint includes claims of gross negligence, assault and battery, false arrest/false imprisonment, intentional infliction of emotional distress, illegal search and seizure, and malicious prosecution. (*See* docket nos. 1 and 41.)

With regard to Plaintiff's proposed claims for false arrest/false imprisonment, intentional infliction of emotional distress, illegal search and seizure, and malicious prosecution, Plaintiff's claims would not survive a Motion under Fed. R. Civ. P. 12(b)(6) and, therefore, they are futile. Plaintiff's claims contain nothing more than threadbare recitals of legal elements with no factual support. Thus, his Motion to Amend with regard to these claims should be denied.

With regard to Plaintiff's claim for assault and battery, Defendants argue that they are shielded from liability where their actions are justified. (Docket no. 43 at 28.) Notably, though, under Michigan law, a police officer who uses excessive force may be held liable for assault and battery. *Affer v. Taylor*, No. 05-74064, 2007 WL 1238909, at *6 (E.D. Mich. April 27, 2007) (citing *White v. City of Vassar*, 403 N.W.2d 124 (Mich. Ct. App. 1987)). Thus, as with Plaintiff's

19

excessive-force claims, the Court should grant Defendants' Motion for Summary Judgement and deny Plaintiff's Motion to Amend with regard to his pre-arrest allegations, but deny Defendants' Motion and grant Plaintiff's Motion with regard to his post-arrest allegations.

Finally, with regard to Plaintiff's gross-negligence claims, "Michigan has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010); *Kelly v. Fruit*, No. 05-73253, 2006 WL 3544107, at *10 (E.D. Mich. Dec. 8, 2006). Plaintiff's claim of gross negligence is based entirely upon his claim of excessive force and assault and battery. Hence, the gross negligence claim should be dismissed and Plaintiff's Motion to Amend should be denied in this regard.

### 3. Plaintiff's Claims (and Proposed Claims) against the AHPD Officers

Although Plaintiff did not specifically name any AHPD officers in his initial Complaint, he did include seven "John Doe" defendants, some of whom he alleges are "officer[s] of the Auburn Hills Police Department." (*See* docket no. 1.) In his proposed Amended Complaint, Plaintiff names these officers (the AHPD Defendants). (*See* docket no. 41.) Moreover, although it does not oppose Plaintiff's Motion to Amend (*see* docket no. 48), in its Motion for Summary Judgment, the AHPD asserts on behalf of the AHPD officers, that none them had any contact with Plaintiff. (Docket no. 56 at 14-16.) In support of this assertion, the AHPD relies on the Oakland County Defendants' Motion for Summary Judgment (wherein it specifies which OCSD officers had contact with Plaintiff) and a dash-cam video from officer Jennifer Carlson's patrol car. (*See id.*) A review of the dash-cam video supports this claim.

But regardless of whether the AHPD Defendants had contact with Plaintiff, "a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer

observed or had reason to know that excessive force would be or was being used, and (2) the officer

had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119

F.3d 425, 429 (6th Cir.1997).  Here, though, there is no evidence to suggest that the AHPD officers

had the means or opportunity to prevent any harm from occurring.  That is, even accepting

Plaintiff's allegations as true with regard to the OCSD Defendants, the alleged kicking only lasted

a matter of seconds, and the dash-cam video shows that none of the AHPD officers were close by.

Consequently, even if the AHPD officers were aware that the OCSD Defendants had used excessive

force after Plaintiff was subdued, it was too late to intervene.  Therefore, the AHPD Defendant's

Motion for Summary Judgment should be granted, and Plaintiff's Motion to Amend should be

denied with regard to the AHPD Defendants.

> **4.      Plaintiff's Proposed Amended Complaint With Regard to Claims Against OCSD Deputies Wheatcroft, Ginnel, Sharma, and Miller and Sergeants Ramsey and Miller**.

The OCSD Defendants assert that Plaintiff's Motion to Amend should be denied with regard

to Deputies Wheatcroft, Ginnel, Sharma, and Miller[5] and Sergeants Ramsey and Miller because

Plaintiff's proposed Amended Complaint does not contain any factual allegations related to them

individually. (Docket no. 51 at 15.)  A review of Plaintiff's proposed Amended Complaint confirms

that Plaintiff failed to make any allegations against these individual Defendants in the body of his

Complaint.  (Docket no. 41).  A defendant against whom the Plaintiff fails to make any allegations

in the Complaint is entitled to be dismissed from the action.  *See Potter v. Clark*, 497 F.2d 1206,

---

[5]Defendants properly include Defendants Garcia and Gracey in the list of officers not
included in the body of Plaintiff's Amended Complaint.  But because the undersigned
recommends denying Defendants' Motion to Dismiss with regard to these deputies, and because
the undersigned recommends ordering Plaintiff to file a new Amended Complaint, they have not
been included in this section.

1207 (7th Cir. 1974) (where complaint alleges no specific act or conduct by party and complaint is silent as to party except for name in caption, dismissal is proper even for pro se plaintiffs); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991) (dismissing defendants because complaint filed pro se named them in caption but filed to allege specific conduct by them in allegedly wrongful actions).  Therefore, Plaintiff's Motion to Amend with regard to these individual defendants should be denied.

> ### 5.     Plaintiff's Proposed Amended Complaint With Regard to Oakland County Sheriff Michael Bouchard

It is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior.  *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998).  Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).  Thus, to state a plausible claim for relief, a plaintiff must allege that each defendant was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct.  *Id.*

In Plaintiff's proposed Amended Complaint, he alleges that Sheriff Bouchard "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of each Oakland Defendant."  Importantly, however, Plaintiff fails to make any factual allegations related to Sheriff Bouchard.  Thus, Plaintiff's Motion to Amend with regard to Sheriff Bouchard should be denied.

> ### 6.     Plaintiff's Proposed Conspiracy Claim

Like many of his state-law claims, Plaintiff's proposed conspiracy claim would not survive

22

a Motion under Fed. R. Civ. P. 12(b)(6) and is, therefore, futile.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (citation omitted).  Plaintiff has not alleged facts to support a claim of conspiracy against any Defendant.  *See Taylor v. City of Detroit*, 368 F.Supp.2d 676, 693-94 (E.D. Mich. 2005) (discussing conspiracy claims under sections 1983 and 1985).  At most, he alleges that the "individual defendants . . . conspired and committed malicious acts in furtherance of their conspiracy to deprive Plaintiff of his Civil Rights."  (Docket no. 41 at 11.)  He provides no factual allegations in support of this contention.  Thus, his Motion to Amend with regard to civil conspiracy should be denied.

### 7. Qualified Immunity

The OCSD Defendants assert that they are entitled to qualified immunity for Plaintiff's claims.  The Sixth Circuit has set forth a three-step inquiry to determine whether a defendant is entitled to qualified immunity: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

Qualified immunity, however, is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff

has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).   Viewing the allegations in the Complaint in a light most favorable to Plaintiff, the undersigned finds that Plaintiff's allegations and the evidence currently before the court create a question of fact with regard to his post-arrest allegations of excessive force.  Moreover, the undersigned finds that the Plaintiff's right to be free from the use of excessive force by police officers in violation of the Fourth Amendment was clearly established at the time of Plaintiff's arrest. Therefore, with regard to Plaintiff's post-arrest claims of excessive force, Defendants are not entitled to qualified immunity.   With regard to Plaintiff's remaining claims, because no constitutional violation occurred, the Court need not address Defendants' claims of qualified immunity.

### D.     Conclusion

For the reasons above, the undersigned recommends the following:

- The OCSD Defendants' Motion for Summary Judgment [43] should be Granted in Part and Denied in Part.  Defendants' Motion should be denied with regard to Defendants' Zora, Garcia, and Gracey and Plaintiff's claims of post-arrest excessive force and post-arrest assault and battery.  Defendants' Motion should be granted with regard to Plaintiff's remaining claims and the remaining OCSD Defendants, including his pre-arrest excessive force and pre-arrest assault and battery claims.

- The AHPD Defendants' Motion for Summary Judgment [56] Should be Granted.

- Plaintiff's Motion to Amend [40] should be Granted in Part and Denied in Part.

Plaintiff's Motion should be granted with regard to his post-arrest excessive force and post-arrest assault and battery claims.  Plaintiff's Motion should be denied with regard to his other claims.  Additionally, the Court should order Plaintiff to file a new Amended Complaint limited to these claims.

• Plaintiff's Motions for Extension [58] [59] and Motion to Stay [65] should be denied as moot.

In sum, this matter should survive only with regard to Plaintiff's post-arrest claims for excessive force and assault and battery.

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response

25

proportionate to the objections in length and complexity.  The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1,"

"Response to Objection #2," etc.

Dated:  November 17, 2014          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

        I hereby certify that a copy of this Report and Recommendation was served on  counsel of
record and on Plaintiff Michael Carroll on this date.

Dated:  November 17, 2014          s/ Lisa C. Bartlett
                                   Case Manager